IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATTHEW BANKS, *et al.*,  )
      Plaintiffs,  )
                       )
                       )
      v.  )      Civil Action No. 1:19-cv-1259
                       )
GATES HUDSON & ASSOCIATES, INC.,  )
*et al.*,  )
      Defendants.  )

## MEMORANDUM OPINION

Plaintiff Matthew Banks ("Banks"), proceeding *pro per*,[1] and Plaintiff Jessica Britton

("Britton), proceeding *pro se*,[2] have filed this action alleging various federal and state law claims

against: (i) the manager of the Fountains Condominiums,[3] where the plaintiffs live; (ii) the board

of directors of the Fountains Condominiums, individually and as the board of directors;[4] and (iii)

two unidentified residents of the Fountains Condominiums, Jane and John Doe.[5] Initially,

---

[1] Although Banks asserts he is proceeding *pro se*, because Banks is an attorney the more appropriate term is that he is proceeding *pro per*.

[2] Banks and Britton are collectively referred to as plaintiffs.

[3] Defendants Gates Hudson and Associates, Inc. and Gates Hudson Community Management LLC (collectively, the "Gates Hudson Defendants") are the real estate agent and community manager for the Fountains Condominiums respectively.

[4] Together, defendants William Aronson, Nicole Ortiz, Josefina Darui, Latoya Edwards, and Gina White (collectively, the "Individual Board Members") constitute the Board of Directors for the Council of Owners (the "Board of Directors") for the Fountains Condominiums and they are sued both individually and collectively as the Board of Directors.

[5] Collectively the Board of Directors, the Individual Board Members, the Gates Hudson Defendants, and Jane Doe are referred to as the "Condo Defendants." All of the Condo Defendants are represented by the same counsel. John Doe has not appeared in this action as discussed further *infra* and is not represented by the Condo Defendants' counsel.

plaintiffs also sued the City of Alexandria, but, on November 18, 2019, plaintiffs voluntarily dismissed their claims against the City. *See* Dkt. 24.

Plaintiffs, in the federal claims in their first amended complaint ("FAC"),[6] allege in essence that defendants discriminated, harassed, and retaliated against them for Banks' use of an emotional support dog that was over the weight limit for pets at the Fountains Condominium. The Condo Defendants filed a motion to dismiss the FAC on the basis that plaintiffs have failed to state either a federal or a state law claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiffs have filed an opposition brief and the Condo Defendants filed replies in support of their motion. On January 13, 2020, oral argument on the motion to dismiss was held. Thereafter, supplemental briefing was filed. Accordingly, the matter is fully briefed and argued and is now ripe for disposition.

## I.

Although factual allegations in the FAC are taken as true solely for the purpose of resolving the motion to dismiss, "a legal conclusion couched as a factual allegation" is not accepted as true. *Papasan v. Allain*, 478 U.S. 265, 283, 286 (1986).

- The Fountains Condominiums is a high-rise condominium in Alexandria, which permits residents to keep pets that weigh less than 30 pounds. *See* FAC ¶¶ 17, 42.

- Banks is a lawyer but is not licensed to practice in Virginia or before this Court. *See* Pls.' Resp. to Mot. to Dismiss (Dkt. 31) ("Opp'n Br.").

- Britton resides with Banks and has provided him with a power of attorney presumably to act on her behalf in connection with this action. *Id.* at 12-13.

- In January 2019, Banks purchased a unit within Fountains Condominiums. FAC ¶ 23. On February 23, 2019, plaintiffs moved into Banks' unit. *Id.* ¶ 37.

- Both plaintiffs allegedly suffer from diagnosed, but not described, mental health conditions. *Id.* ¶ 38.

---

[6] Plaintiffs amended their original complaint as a matter of right pursuant to Rule 15(a), Fed. R. Civ. P.

- Banks alleges that he was prescribed his dog as an emotional support animal. *Id.* ¶ 39.

- Banks' dog is over the weight limit for pets to reside at the Fountains Condominiums. *Id.* ¶ 43.

- Banks requested, as an accommodation for his alleged mental health condition, that the Condo Defendants[7] grant an exception to the weight limit policy at the Fountains Condominiums and that his dog be permitted to reside in his condominium unit. *Id.* ¶ 44. The Condo Defendants granted Banks' request and the dog was permitted to reside in plaintiffs' condominium unit despite being over the allowed pet weight limit. *Id.* ¶ 46.

- In March 2019, Jane Doe, a resident of the Fountains Condominiums, saw Banks and his dog in an elevator. Jane Doe asked Banks how the dog got in the building and Banks explained that the dog had permission to be present. Jane Doe then said the Board of Directors would not approve and that she would not vote for the dog's presence in the Fountains Condominiums. *Id.* ¶¶ 47-52.

- Also, in March 2019, John Doe, another resident of the Fountains Condominiums, approached Britton while she was walking Banks' dog. John Doe called the dog a "fighting dog," demanded to know how the dog got into the building and threatened to kill the dog if it came near him or his own dog. Plaintiffs reported the incident to the police and to a Gates Hudson employee, Quiana Bennet.[8] *Id.* ¶¶ 54-57. Bennet said that John Doe had already yelled at her about the dog. *Id.* ¶ 58.

- In April or May 2019, Jane Doe again approached Banks and his dog while they were outside of the condominium building. Jane Doe yelled at Bank about the dog relieving himself outside. As Jane Doe approached Banks, Jane Doe's dog also began to bark at Banks' dog. Banks pulled his dog away and continued on his walk. When Banks returned to the building, Jane Doe blocked the entrance. Banks stated that the need to go inside and Jane Doe moved aside. *Id.* ¶¶ 61-71.

- In May 2019, Latoya Edwards, the Director of the Board of Directors, saw Britton walking the dog. Edwards began yelling at Britton about whether the dog was registered with the building and that the dog did not have permission to be in the building. Britton replied that the dog was registered and walked away. *Id.* ¶¶ 72-76.

- On July 5, 2019, Jane Doe approached plaintiffs while they were walking the dog. Jane Doe began yelling about the dog relieving himself. Plaintiffs ignored Jane Doe and her dog, which was barking. Banks had to choke his own dog to pull his dog away from Jane Doe and her dog. *Id.* ¶¶ 78-83.

---

[7] It is unclear from the FAC to which specific defendant plaintiffs made this request.

[8] At times, plaintiffs spell this person's name as "Bennet" and at other times "Bennett." For purposes of this Memorandum Opinion, Quiana Bennet will be referred to as Bennet.

- On two occasions, Banks emailed complaints to Bennet. *Id.* ¶ 90.

- In response, the Gates Hudson Defendants now posts signs urging occupants to register pets. *Id.* ¶ 89.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

## III.

In the motion to dismiss, the Condo Defendants seek dismissal of any claims brought by Britton. Britton did not sign the Amended Complaint and no counsel has entered an appearance on her behalf. *See* FAC at 24. In the opposition brief, Banks asserts that he has a power of attorney from Britton which authorizes him to prosecute this matter on her behalf. Opp'n Br. at 11.[9]

As plaintiffs acknowledge, "[e]very pleading . . . must be signed . . . by a party personally if the party is unrepresented." Opp'n Br. at 11 (citing Rule 11(a), Fed. R. Civ. P.). Plaintiffs

---

[9] Contrary to plaintiffs' assertion, the Condo Defendants do not seek to raise the affirmative defense of capacity. Rather, the Condo Defendants argue that Banks is not able to represent Britton in this case. As Banks concedes, although he is a lawyer, he is not licensed to practice in Virginia, or the Eastern District of Virginia, and is himself proceeding *pro per*. Opp'n Br. at 2.

4

argue that because Britton has provided Banks with a power of attorney Britton is properly

represented by Banks.  This is incorrect; Britton may not be represented by Banks.  Banks

concedes that he is proceeding *pro per*, but as the Fourth Circuit has held, "[t]he right to litigate

for *oneself*, . . . does not create a coordinate right to litigate for *others*." *Myers v. Loudoun Cnty.*

*Pub. Schs.*, 418 F.3d 395, 400 (4th Cir. 2005).  And this is so even where there is a power of

attorney for courts have uniformly recognized that a "power of attorney may confer[] certain

decision-making rights under state law, but it does not allow him to litigate *pro se* on behalf of

his [girlfriend] in federal court." *In re Radogna*, 331 F.App'x 962, 964 (3d Cir. 2009).[10]  Banks'

inability to represent Britton *pro se* provides a basis to dismiss all of the claims brought by

Britton.  *See McHam v. Wells Fargo Bank*, No., 2014 WL 7186924, at *3 (M.D.N.C. Dec. 17,

2014) (dismissing claims brought by *pro se* power of attorney on behalf of plaintiff).  In any

event, the analysis here will proceed on the assumption that Britton is proceeding *pro se* and that

she adopts the allegations in the FAC and the arguments that Banks makes in opposition to the

motion to dismiss.  But it must be clear that Banks does not represent Britton.  If Britton wishes

to be represented by counsel, then she must retain an attorney or, if she chooses not to do so, she

may proceed *pro se*.  Nonetheless, Britton's claims will be considered on the merits.

## IV.

As an initial matter, it is important to address the status of Defendant John Doe, an

unidentified resident of the Fountains Condominiums.  On November 18, 2019, plaintiffs

---

[10] *See also Barefoot v. United States*, No. 5:15-cv-596, 2017 WL 563965, at *1 n.1 (W.D.N.C. Feb. 10, 2017); *Normand v. Reynolds*, No. 5:13–CV–222–F, 2013 WL 2467987, at *1 n. 1 (E.D.N.C. June 7, 2013) (unpublished) (noting that the plaintiff's attempt to litigate via a power of attorney provided an alternate ground for dismissal); *SEC v. White*, No. 8:11–944–HMH–KFM, 2011 WL 1544202, at *3 (D.S.C. Apr. 22, 2011) (unpublished) (prohibiting the defendant from allowing his wife to sign motions on his behalf despite an executed power of attorney); *Umstead v. Chase Manhattan Mortg. Corp.*, No. 7:04CV747, 2005 WL 2233554, at *2 (W.D.Va. Sept. 13, 2005) (unpublished) (ruling that, despite possessing a power of attorney, "M. Umstead, as a lay person without a license to practice, cannot represent J. Umstead in this action").

submitted an executed summons as to John Doe, which asserts that the summons and complaint

was served on Quiana Bennett, Assistant Property Manager who was authorized to accept service

on behalf of John Doe.  *See* Proof of Service at 20 (Dkt. 22).  Plaintiffs have not moved for an

entry of default against John Doe.  John Doe's name has never been revealed and thus Bennett

could not have known who she was accepting service on behalf of and whether she was

authorized to accept such service.  Service on John Doe therefore was not properly

accomplished.[11]

    Nonetheless it is appropriate to consider the claims against John Doe based on the

arguments made by the Condo Defendants in their motion to dismiss.  *See Lee v. Children's*

*Servs. Of Va.*, No. 05-cv-153, 2005 WL 1279173, at *3 (E.D. Va. 2005) (dismissing claim

against "all defendants, served and unserved").[12]  Accordingly, the Court will analyze each of the

claims against John Doe as well as the Condo Defendants when considering the motion to

dismiss.

## V.

    The Condo Defendants seek to dismiss the federal claims against them.  In Counts I, II,

and XIV, plaintiffs assert the following claims under federal law: (i) violations of 42 U.S.C.

---

[11] *See Scates v. Doe*, No. 6:15-cv-2904, 2016 WL 8672963, at *10 (D.S.C. May 6, 2016) (holding that John Doe defendant was not properly served when "John Doe is not an identified individual and Mr. Barnett would not be authorized to accept service for the John Doe defendant"); *Humes v. City of Blue Ash*, No. 12-cv-960 , 2013 WL 5934429, at *2 (S.D. Ohio Oct. 31, 2013) ("In this case, none of the John or Jane Doe SWAT members were served in a way that satisfied the requirements of personal service because none of the individuals were ever named."); *Mayfield v. Harvey Cnty. Sheriff's Dept.*, No. 14-cv-1307, 2015 WL 567078, at *2 (D. Kan. Feb. 11, 2015) (denying motion for default judgment against John and Jane Doe Defendants and noting "the possibility of *sua sponte* dismissal of claims against the John/Jane Doe defendants").

[12] *See Davis v. Bryson*, No. 5:17-cv-60, 2017 WL 5179237, at *7 n.11 (W.D. Va. 2017) (dismissing *sua sponte* claims against John Doe defendants); *Reyes v. Bank of America*, No. 12-cv-3793, 2013 WL 6012504, at *1 (D. Md. 2013) (dismissing claims against "all defendants, served and unserved").

§ 1983; (ii) violations of the Fair Housing Act; (iii) § 504 of the Rehabilitation Act; and (iv) 42 U.S.C. § 1985.  Each of the federal claims is analyzed separately.

### A.

Count I asserts a claim under 42 U.S.C. § 1983 against the Condo Defendants and John Doe.  The Condo Defendants assert that, because they are not state actors, plaintiffs cannot state a plausible claim for relief against them under § 1983.  Plaintiffs argue that they have alleged that the Condo Defendants are state actors and that is sufficient to survive a motion to dismiss.[13]

As the Supreme Court has recognized, to implicate § 1983, conduct must be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Accordingly, the Fourth Circuit has held that "[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999).  Plaintiffs assert that they have alleged that the Condo Defendants are state actors because they are licensed by the Commonwealth of Virginia, *see* FAC ¶ 98, and because the Condo Defendants are controlled by an agency of the state.  *See* Pls. Surreply at 14.  Plaintiffs' argument ignores the differences between the various defendants sued.

To begin with, the Individual Board Members and Jane and John Doe are neither licensed by the Commonwealth of Virginia, nor are they alleged to be controlled by an agency of the state.  There are no allegations that any of these individual defendants, in their individual capacities, are state actors.  Any such allegations would plainly be frivolous "because it is readily apparent that none of the[se] defendants [are ] state actor[s]." *Polidi v. Cheshire Parker*

---

[13] Plaintiffs do not distinguish between the Condo Defendants in their briefs.  It is necessary to consider the different defendants separately, however, because there are different allegations regarding the defendants and the defendants are differently situated from one another.

*Schneider & Bryan, PLLC*, No. 1:16-cv-1534, 2016 WL 10587106, at *2 (E.D. Va. Dec. 22, 2016). Accordingly, the § 1983 claim against the Individual Board Members and Jane and John Doe must be dismissed.

In the FAC, plaintiffs allege only that the Gates Hudson Defendants are licensed by the Commonwealth of Virginia and that this is sufficient to render the Gates Hudson Defendants state actors. *See* FAC ¶¶ 3-4; Pl. Surreply at 12-13. This argument fails for licensure by the state does not convert private parties into state actors. Were this otherwise, every licensed driver would be a state actor. Courts have routinely held that licensure is not sufficient to transform a private actor into a state actor. *See Crawford-El v. Shapiro*, 1989 WL 64191, at *1 (4th Cir. 1989) (holding that an attorney's bar license does not convert the attorney into a state actor).[14] Accordingly, the state's licensure of the Gates Hudson Defendants does not convert the Gates Hudson Defendants into state actors for purposes of a § 1983 claim.

Next, in their effort to transform the Condo Defendants into state actors, plaintiffs argue that the Condo Defendants are obligated to comply with state law and regulations and that this converts the defendants into state actors. Here again, plaintiffs are mistaken. As the Supreme Court has held in numerous cases, the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).[15] Plaintiffs acknowledges that the Fourth Circuit has held that there are

---

[14] *See also Pfoltzer v. Cnty. Of Fairfax*, 775 F. Supp. 874, 891 (E.D. Va. 1991) (holding that an allegation that a defendant "was licensed or approved by the state" was "not sufficient to convert private parties into state actors"); *Comisky v. JFTJ Corp.*, 989 F.2d 1007 (8th Cir. 1993) (holding that a liquor licensee was "not a state actor on the basis of operating under a state-issued liquor license"); *Cancel v. Amakwe*, 551 F. App'x 4 (2d Cir. 2013) ("A state's licensure or regulation of a private actor's business does not establish a sufficient nexus fairly to attribute the business's actions to the state.").

[15] *See Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982)(A nonprofit, privately operated school's discharge decisions were not acts of the State subject to suit under Section 1983 even though the school that was performing a "public function, received public funds, and was regulated by a State agency"); *Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982)(finding that medicaid recipients failed to establish State action where recipients challenged their transfer

four "exclusive circumstances" under which a private party can be deemed a state actor. Pl. Surreply at 11 (citing *Schwab v. Hansen*, No. 2:17-cv-394, 2018 WL 2386059, at *3 (E.D. Va. May 25, 2018)). Those four circumstances are:

1. When the state has coerced the private actor to commit an act that would be unconstitutional if done by the state;

2. When the state has sought to evade a clear constitutional duty through delegation to a private actor;

3. When the state has delegated a traditionally and exclusively public function to a private actor; or

4. When the state has committed an unconstitutional act in the course of enforcing a right of a private person.

*DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999).

None of these circumstances is present here; indeed, plaintiffs do not argue otherwise. Instead, plaintiffs argue that the Condo Defendants are controlled by the state because they are regulated by the state and required to comply with state law. As stated previously, this argument fails. The mere fact that a person or entity is subject to state regulation or state law does not operate to transform a private actor, namely the Condo Defendants, into a state actor. Accordingly, plaintiffs have failed to allege facts that plausibly establish that the Condo Defendants are state actors.

Finally, plaintiffs argue that "Defendants *are* state actors because Plaintiffs *said* they are." Pl. Surreply at 11 (emphasis in original). This argument is plainly meritless it is not enough for plaintiffs to allege conclusorily that the Condo Defendants are state actors. For as the Supreme Court has recognized, "[t]hreadbare recitals of the elements of a cause of action,

---

from nursing homes to lower levels of care without adequate notice or hearing, and the decisions were made by private physicians and nursing home administrators who were not influenced by the State's obligation to adjust benefits in conformity with changes in cost of medically necessary care); *Moose Lodge v. Irvis*, 407 U.S. 163, 176, (1972)(Although the Moose Lodge was regulated by the State Liquor Board, the Moose Lodge's racially motivated refusal to serve liquor to an individual in the private club on private property did not result in State action.).

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79;

*Richardson v. Hancq*, No., 2018 WL 10667258, at *2 (E.D. Va. Mar. 7, 2018) ("Plaintiff's

claims are conclusory and fail to allege facts that make plausible that any of the Defendants

violated § 1983"). Accordingly, plaintiffs in the FAC have failed to state a claim under § 1983

and their § 1983 claim must be dismissed.

## B.

In Counts I and II, plaintiffs allege violations of the Fair Housing Act (the "FHA"). In

Count I, plaintiffs allege discrimination under the Fair Housing Act, but fail to identify any

specific provision of that Act that has been violated. Similarly, in Count II, plaintiffs allege that

interference, coercion, and intimidation under the Fair Housing Act, but fail to identify any

specific provision of that act that has been violated.

## 1.

The Condo Defendants reasonably surmise that Count I is based on an alleged violation

of 42 U.S.C. § 3604, which protects against discrimination in the sale or rental of housing. In

their opposition brief, plaintiffs accept this and specifically argue that they state a claim under

§ 3604(f)(3)(B). Accordingly, analysis of the alleged Fair Housing Act violation in Count I will

proceed as if it is asserted under § 3604.

Under § 3604, it is unlawful to discriminate in the sale or rental of a dwelling because of

a handicap. 42 U.S.C. § 3604(f)(2). For purposes of subsection (f), discrimination includes "a

refusal to make reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford such person equal opportunity to use and enjoy a

dwelling" *Id.* § 3604(f)(3)(B). In Count I, plaintiffs allege that Banks has a handicap and that he

requested a reasonable accommodation, the use of his emotional support animal. Plaintiffs

allege: "Defendants had an intentionally discriminatory purpose in denying Plaintiff's [sic] and

enjoyment of his home by allowing Plaintiffs [sic] dog into the Fountains . . . but failing to act on

the full extent of the request which would allow [sic] and by refusing to address multiple

complaints by Plaintiffs." FAC ¶ 99.

Courts recognize that, under the FHA, "a violation occurs when the disabled resident is

first denied a reasonable accommodation." *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124

F.3d 597, 602 (4th Cir. 1997); *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875

(11th Cir. 2011) (holding that, in order to make a claim under the FHA, a plaintiff "must actually

request an accommodation and be refused"). Here, plaintiffs concede that the Condo Defendants

granted their request for an accommodation and allowed their dog, who was over the pet weight

limit, to reside there. *See* FAC ¶ 46 ("Plaintiffs' emotional support dog was granted permission

to reside with Plaintiffs in their home as an accommodation"). Nor do plaintiffs allege that they

asked for any additional actions or accommodations. In their opposition brief, plaintiffs assert

that Britton complained about intimidation and asked for assistance, but that the Gates Hudson

Defendants explicitly declined to resolve the issue. Opp'n Br. at 17. Yet, this is not what

plaintiffs have alleged in the FAC. In the FAC, plaintiffs simply allege that Britton informed

Bennet of a verbal altercation with John Doe and that "nothing was done." FAC ¶¶ 58-60.

Plaintiffs neither allege that they asked that anything be done, nor what further accommodation

the Condo Defendants should have offered.[16]

---

[16] Later in the FAC, plaintiffs assert that the Condo Defendants failed to post a fair housing poster in compliance with 24 C.F.R. §§ 110.10 and 110.30. Plaintiffs, however, have not sought to pursue any claims under those regulations. Moreover, plaintiffs do not allege that they requested that the Condo Defendants post fair housing posters as an accommodation.

In their opposition brief, plaintiffs cite to case law regarding a constructive denial of an accommodation. Yet, based on the FAC, plaintiffs have not alleged that there was any delay in consideration of the requested accommodation. Plaintiffs moved into their unit on February 23, 2019 and, at least by March 2019, plaintiffs' dog was permitted to reside with plaintiffs' as an accommodation. FAC ¶¶ 37, 46-47. Thus, the FAC does not allege that consideration of the requested accommodation was unreasonably delayed, or, indeed, delayed at all.

Finally, plaintiffs do not allege the nature of Banks' handicap.[17] In the FAC, plaintiffs merely allege that Banks suffers from "diagnosed mental health conditions" without further explanation. FAC ¶ 38. Nor does the FAC allege that plaintiffs were treated differently *because of* Banks' handicap or disability. Rather, plaintiffs allege that they were treated differently because of (i) the size of their dog and (ii) where the dog relieved itself at the Fountains Condominiums' property. These allegations fall far short of stating a claim for relief under the FHA. As the Fourth Circuit has recognized, a plaintiff must "adequately identify [his or her] mental disability" and allege facts that "give rise to a reasonable inference" that he or she is handicapped under the FHA. *Thomas v. The Salvation Army Southern Territory*, 841 F.3d 632, 639 (4th Cir. 2016).[18] Moreover, the plaintiff must "draw a sufficient nexus of causation between whatever mental illness [he or she] may have and the defendants' actions." *Id.* Plaintiffs have failed to do so here and have only conclusorily alleged that "Defendants had an intentionally discriminatory purpose in denying Plaintiff's use and enjoyment of his home."

---

[17] Although the FAC alleges that both Banks and Britton have handicaps, Banks' handicap is the only one relevant for purposes of the FHA because plaintiffs allege that they were discriminated against on the basis of Banks' emotional support dog.

[18] *Morris v. Leon N. Weiner & Assocs., Inc.*, No. 16-cv-2860, 2017 WL 1169522, at *5 (D. Md. Mar. 28, 2017) ("Here, Morris does not describe the nature of his disability and, even if he has a handicap as defined by the FHA, he has not alleged how he was treated differently from other tenants because of his disability."); *Chesler v. Conroy*, No. 08-cv-2679, 2008 WL4543031, at *3 (N.D. Ill.) (dismissing FHA claim where hostility was "not because of" the plaintiff's alleged handicap).

FAC ¶ 99. As the Condo Defendants correctly argue, this allegation is no more than "labels and conclusions" and insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678-79.

In sum, plaintiffs have failed to allege: (i) that they were denied an accommodation; (ii) that Banks has a handicap as defined under the FHA; and (iii) that they were discriminated against because of any handicap or disability. Accordingly, plaintiffs have failed to state a claim under the FHA for discrimination.

## 2.

In Count II, plaintiffs bring a second claim under the FHA, this one for "interference, coercion, or intimidation." FAC at 13. The Condo Defendants reasonably construed this claim as a claim for retaliation. Mot. at 9. In their opposition brief, plaintiffs accept that construction of their claim and argue that they have stated a claim for retaliation. Opp'n Br. at 20. It is therefore appropriate to analyze the FHA claim in Count II as a retaliation claim.

To state a claim for retaliation under 42 U.S.C. § 3617 of the FHA, a plaintiff must establish: (i) that he was engaged in protected activity; (ii) that the defendant was aware of that activity; (iii) that the defendant took adverse action against the plaintiff; and (iv) that a causal connection existed between the protected activity and the asserted adverse action. *Hall v. Greystar Mgmt. Servs. LP*, 637 F. App'x 93, 98 (4th Cir. 2016). In the context of an FHA retaliation claim, the Fourth Circuit has instructed that retaliation is not plausible where there is an "obvious alternative explanation" and that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here, the Condo Defendants correctly assert that plaintiffs have failed to allege that the Condo Defendants took any adverse action against them. Courts recognize that the FHA does not "impose a code of civility on those dealing with individuals who have exercised their FHA

rights." *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 251 (D.N.J. 2001); *see also Halprin v. The Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328 (7th Cir. 2004) (holding that the FHA was not intended to "convert every quarrel among neighbors . . . into a federal case"). At best, plaintiffs have alleged that two residents (i) asked plaintiffs about the size of their dog, including a resident stating that he felt threatened by the size of the dog, and (ii) complained about where the dog relieved itself on the Fountains Condominiums' property. Courts have sensibly rejected similar claims when a person with a service or emotional support dog was questioned regarding the dog. Thus, in *Stevens v. Hollywood Towers & Condominium Association*, 836 F. Supp. 2d 800 (N.D. Ill. 2011), the plaintiff sued under the FHA based on treatment she received for her use of an "emotional service therapy dog." *Id.* at 805. Although plaintiffs alleged that "she was repeatedly accosted and questioned by other residents about her need for a dog and the nature of her disability," the district court held that "the Court is highly skeptical that Defendants had any responsibility to control the behavior of other tenants who questioned Plaintiffs about the service animal." *Id.* at 809.[19] Also, in *Kromenhoek v. Cowpet Bay West Condo. Ass'n*, 77 F. Supp. 3d 454 (D.V.I. Dec. 24, 2014), the plaintiff asserted FHA claims against a neighbor who suggested that condominium owners ostracize dog owners, including the plaintiff. *Id.* at 461. The district court held that the plaintiff's claims were "better characterized as a quarrel between neighbors or isolated acts of discrimination than conduct violating" the FHA. *Id.* (citing *Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014)). [20]

---

[19] A failure to accommodate claim proceeded and interference claim proceeded, based on restrictions placed on plaintiffs' ability to use certain building entrances with the dog. *Id.* at 810.

[20] In *Bottila v. City of Madison*, No. 08-cv-433, 2008 WL 4163180(W.D. Wisc. Sept. 3, 2008), a plaintiff alleged discrimination and harassment under the Americans with Disabilities Act, based on a city bus driver's questioning regarding the nature of plaintiff's disability and the qualifications of the service dog. *See id.* at *1. The district court denied the plaintiff's claim of discrimination stating that, "[at] worst, the behavior of the bus drivers could be viewed as insensitive, but it does not constitute a violation of petitioner's rights." *Id.*

Plaintiffs also fail to allege facts establishing the causal nexus to plaintiffs' exercise of their rights under the FHA.  It appears that plaintiffs were questioned and confronted about their emotional support dog, not because the dog was used for emotional support, but because the dog was larger than permitted at the Fountains Condominiums and because it was relieving itself in certain areas.  *See Lawson v. Kelly*, No. 5:11-cv-119, 2011 WL 6119099 (N.D. Fla. Oct. 13, 2011) (dismissing FHA claim where "plaintiffs do not allege the causal relationship necessary" because "plaintiffs do not contend that Ms. Kelly threatened the service dog in retaliation for Dyson's exercise or enjoyment of a right protected" by the FHA).

Plaintiffs have failed to state a claim for retaliation because plaintiffs fail to allege facts demonstrating that the Condo Defendants engaged in an adverse action *because* of plaintiffs' exercise of rights protected under the FHA.  Accordingly, Count II must be dismissed as to all defendants.

## C.

Plaintiffs next federal cause of action is brought pursuant to § 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  To establish a *prima facie* case of disability discrimination under this statute, a plaintiff must establish (i) that he has a qualifying disability; (ii) that he is otherwise qualified for the benefit in question; and (iii) that he was excluded from the benefit "due to discrimination solely on the basis of the disability."  *Doe v. Univ. of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).  For the purposes of the Rehabilitation Act, a "disability" is "a physical or mental impairment that substantially limits one or more major life

15

activities of [an] individual; a record of such impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see* 29 U.S.C. § 705(9)(B) (providing that 42 U.S.C. § 12102 will define the term disability for purposes of the Rehabilitation Act).

In the FAC, plaintiffs allege that the Gates Hudson Defendants receive federal financial assistance and that the Board of Directors receive federal financial assistance. *See* FAC ¶¶ 3-4, 6. Plaintiffs do not separately allege any other facts that differ from plaintiffs' FHA claim as supporting the Rehabilitation Act claim, which is also part of Count I. The Condo Defendants argue that the Rehabilitation Act claim should be dismissed because the FAC does not include plausible allegations that the Condo Defendants receive federal funds or that plaintiffs were denied benefits because of a disability.[21]

To begin with, there are no factual allegations that the Individual Board Members or Jane or John Doe received any federal financial assistance so as to be subject to the Rehabilitation Act. Accordingly, any claim under the Rehabilitation Act must be dismissed as to those defendants.

Moreover, the claims against the Gates Hudson Defendants and the Board of Directors under the Rehabilitation Act also fails for three reasons. First, plaintiffs have failed to allege that they are disabled within the meaning of the Rehabilitation Act. Plaintiffs merely allege that "[p]laintiffs both suffer from diagnosed mental health conditions." FAC ¶ 38. This is not sufficient to allege that they suffer from a disability covered by the Rehabilitation Act. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 751 (4th Cir. 2018) (affirming dismissal of

---

[21] In their opposition brief and surreply, plaintiffs addressed only whether there were plausible allegations that the Condo Defendants received federal funds.

Rehabilitation Act claim where the complaint pled "only the vague generality that the Residents are 'qualified individuals with a disability'").[22]

Second, plaintiffs fail to allege facts to demonstrate that they were excluded from any program or benefit. Instead, plaintiffs admit that they were permitted to have their dog in the Fountains. *See Green v. Young*, No. 7:03-cv-722, 2004 WL 5327170, at *8 (E.D. Va. June 8, 2004) (dismissing Rehabilitation Act claim because "Green has not been denied access to any existing VDOC program or service on the basis of any disability"). Thus, there are no facts in the FAC to show that plaintiffs were excluded from any program or benefit as required by the Rehabilitation Act.

Third, plaintiffs have not alleged that they were excluded from any program or benefit solely on the basis of their disabilities. As the Fourth Circuit has held, the Rehabilitation Act's causation requirement is a "stricter causation requirement than the ADA or FHA, under which the disability can be one of multiple causes." *Thomas*, 841 F.3d at 643. Here, plaintiffs claims not only fail for the same reasons that the FHA claims fail, but plaintiffs claims fail to establish a causal nexus because the plaintiffs allege the existence of other motivating factors. Plaintiffs allege other facts that demonstrate that their alleged disabilities were not the sole motivating factor in any interaction with other condominium owners. Plaintiffs allege: (i) that the neighbors did not like the size of the dog, FAC ¶¶ 49-51; (ii) that a neighbor was afraid the dog was aggressive, *id.* ¶ 56; and (iii) that a neighbor did not like where the dog relieved itself, *id.* ¶ 62. These explanations for the neighbors' behavior, based on plaintiffs' own allegations, demonstrate that discrimination under the Rehabilitation Act, even if it existed, was not a sole

---

[22] *See also Smith v. Verizon Commc'n's*, No. 06-cv-3411, 2008 WL 11366423, at *5 (D. Md. July 31, 2008) (dismissing Rehabilitation Act claim where plaintiff alleged only that he had a disability and that it had been documented).

17

motivating factor for any of their actions. Moreover, plaintiffs allege no facts demonstrating that any of the Condo Defendants acted on the basis of discrimination, and rely solely on their conclusory allegations that it is so. *See* FAC ¶ 99. This kind of conclusory allegation is not sufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678-79 (holding that "mere conclusory statements, do not suffice"). Accordingly, plaintiffs claim under the Rehabilitation Act must be dismissed.

### D.

Plaintiffs final federal claim alleges that the Condo Defendants violated 42 U.S.C. § 1985. This argument also fails. Although plaintiffs do not specify under which clause they intend to bring their § 1985 claim, presumably plaintiffs pursue a claim under § 1985(3).

To state a claim under 42 U.S.C. § 1985(3) a plaintiff must set forth the following: (i) a conspiracy of two or more persons; (ii) who are motivated by a specific class-based discriminatory animus; (iii) to deprive the plaintiff of the equal enjoyment of rights secured by law; (iv) which results in injury to the plaintiff; (v) as a consequence of an overt act committed by the defendants in connection with the conspiracy. *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).

Unlike § 1983, § 1985(3) reaches private conspiracies. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Section 1985(3), however, provides "no substantive rights itself, it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). Significantly, the Fourth Circuit has made clear that these underlying rights must be "rights guaranteed by federal law or the Constitution." *Doski v. M. Goldeker Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976). Those rights must also be "guaranteed against private impairment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274

18

(1993). Plaintiffs fail to identify such a right here as the basis for their § 1985 claim. Moreover, each of the violations of federal law that plaintiffs have alleged have failed to state a claim as discussed *supra*.

Not only does plaintiffs' 1985(3) claim fail because it fails to identify a conspiracy to deprive plaintiffs of a specific right guaranteed by federal law against private impairment, but plaintiffs also fail to allege facts adequately establishing a conspiracy. The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377. Moreover, the Fourth Circuit has "rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Id.* Plaintiffs conclusorily allege that: "Defendants combined, associated, agreed, mutually undertook and concerted together for the purpose of willfully and maliciously injuring Plaintiffs." FAC ¶ 198. Not only do plaintiffs allege a conspiracy in only vague and conclusory terms, but plaintiffs fail to allege that the conspiracy was to deprive plaintiffs of their constitutional or federal rights. In fact, plaintiffs fail to allege an object of the conspiracy at all, other than to injure plaintiffs. This is not sufficient to demonstrate "a meeting of the minds by defendants to violate the [plaintiffs'] constitutional rights." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011); *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) ("Allegations of parallel conduct and a bare assertion of a conspiracy are not enough for a [§ 1985] claim to proceed."). There are no allegations about the "who, when, how, or where" of the alleged conspiracy. *Thompson v. Wise Gen. Hosp.*, 707 F. Supp. 849, 852 (W.D. Va. 1989).

Finally, plaintiffs' § 1985(3) claim fails, because the FAC fails to allege that the conspirators were motivated by a discriminatory animus. As discussed *supra*, plaintiffs have

alleged no facts demonstrating discrimination based on a disability or handicap.[23] The FAC does not allege any facts concerning which defendants were aware of plaintiffs' alleged mental health conditions or facts regarding any of the defendants' taking or failing to take any actions because of plaintiffs' alleged mental health conditions. Putting aside plaintiffs' conclusory statements and legal conclusions, the only facts that plaintiffs have alleged are that two unidentified residents at the Fountains Condominiums expressed their concerns about Banks' dog. *See Mcgill v. DePinto*, No. 3:10-cv-331, 2011 WL 2469843, at *6 (W.D.N.C. June 17, 2011) (dismissing § 1985 claim because the plaintiff failed to allege non-conclusory factual allegations regarding discriminatory animus). These facts do not establish a discriminatory animus sufficient to state a claim under § 1985. Accordingly, plaintiffs fail to state a plausible cause of action under § 1985(3) and his claim must be dismissed.

*     *     *

Each of plaintiffs' federal claims has been dismissed for failure to state a claim. The FAC does not forecast any facts that plaintiffs could allege that would cure the defects of the FAC. If plaintiffs believe that they can amend the FAC to state a claim under one of the federal laws contained in the FAC, then plaintiffs may file a motion seeking leave to amend and attaching a proposed second amended complaint. If plaintiffs fail to do so within thirty days of the entry of this Memorandum Opinion, then the federal claims will be dismissed with prejudice. Plaintiffs are reminded that *pro per* and *pro se* parties, although not represented by counsel, must abide by the Federal Rules of Civil Procedure, including the strictures of Rule 11 which imposes a good faith pleading requirement and requires that filings not be made without a factual basis.

---

[23] Indeed, plaintiffs have failed to allege sufficient facts to demonstrate that they have such a disability or handicap within the meaning of the various federal laws under which they seek to state a claim.

Litigants must take care to file a pleading that complies with the strictures and requirements of Rule 11 or they may be subject to monetary sanctions.[24]

## VI.

Because all of plaintiffs' federal claims, over which there is jurisdiction pursuant to 28 U.S.C. § 1331, have been dismissed, plaintiffs' state-law claims in Counts I-XIV will also be dismissed without prejudice. When all federal claims in a case are dismissed, courts may, at their discretion, decline to exercise supplemental jurisdiction over the remaining claims.[25] *See* 28 U.S.C. § 1367 (c)(3) (permitting district courts to decline supplemental jurisdiction of state law claims where "the district court has dismissed all claims over which it has original jurisdiction"). That discretion is properly exercised when all federal claims are dismissed before trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."), *cited in Mora v. City of Gaithersburg*, 519 F.3d 216, 231 (4th Cir. 2008) (dismissing state law claims without prejudice upon dismissal of all federal claims). Because no federal claims remain in this case and because plaintiffs' federal claims have been dismissed at this early, pre-discovery stage of the litigation, the state law claims in Counts I-XIV of the FAC will be dismissed without prejudice to plaintiffs' ability to raise those state law claims in state court.

## VII.

For the reasons set forth above, the Condo Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. The motion is granted insofar as it applies to

---

[24] *Abbott v. Suntrust Mortg., Inc.*, 2009 WL 971267, at *4 (E.D. Va. Apr. 8, 2009) ("Litigants proceeding *pro se* are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support.").

[25] It is clear from the allegations of the FAC, that there is no other basis for federal jurisdiction over the state law claims.

the federal claims contained in Counts I, II, and XIV. The motion is denied insofar as the Condo Defendants sought a dismissal on the merits with respect to the state law claims. The federal claims contained in Counts I, II, and XIV of the FAC are dismissed. Subject to the strictures and requirements of Rule 11, Fed. R. Civ. P, plaintiffs may file a motion seeking leave to amend the federal claims and attaching an amended complaint within thirty days of the entry of this Memorandum Opinion. The state law claims contained in Counts I-XIV are dismissed without prejudice to plaintiffs' ability to raise those state law claims in state court.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Order to plaintiffs at their address of record and to all counsel of record.

Alexandria, Virginia
June 23, 2020

/s/

T. S. Ellis, III
United States District Judge

22